**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| D.G. AND J.G., INDIVIDUALLY and O/B/O MINOR, V.G.,<br><br>Plaintiffs,<br><br>v.<br><br>MORRIS SCHOOL DISTRICT BOARD OF EDUCATION, *et al.*,<br><br>Defendants. | No. 26cv6557 (EP) (JSA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

On September 2, 2026, the Court issued a Text Order[1] directing the District to cease the one-to-one shadowing requirement described in Plaintiffs' September 1, 2026 application[2] and to maintain V.G. in the stay-put placement established by his April 23, 2025 Individualized Education Program ("IEP") as required by the Court's August 20, 2026 Memorandum Order.[3] September 2 Text Order. Presently before the Court is the Morris School District Board of Education's (the "District") motion pursuant to Federal Rule of Civil Procedure 65(b)(4) to dissolve or modify the Court's September 2, 2026 Text Order, and its request for an immediate hearing.[4]

---

[1] D.E. 53 (the "September 2 Text Order" or the "Text Order").

[2] D.E. 51 ("Plaintiffs' Application").

[3] D.E. 49 (the "Stay-Put Order").

[4] D.E. 55 ("Motion" or "Mot."). The District filed its Notice of Motion and Memorandum of Law in support of the Motion as a single document.

The District argues that the Text Order functioned as a temporary restraining order entered without the process required by Rule 65. Mot. at 6–10.

Plaintiffs' Application, however, did not seek a second preliminary injunction under Rule 65(a) or a temporary restraining order. It instead invoked the injunction the Court had already entered after full adversarial briefing and asked the Court to enforce the stay-put placement the District had been ordered to maintain. *See* Plaintiffs' Application; Stay-Put Order. The Text Order did not expand the relief granted by that existing injunction; it applied the injunction to the District's post-Order conduct and directed compliance with V.G.'s stay-put placement. Rule 65(b)(4) therefore does not apply. And even if the District's Motion is alternatively construed as a request to modify the existing injunction, the District has not identified changed circumstances warranting modification. Therefore, the Court will **DENY** the Motion and request for a hearing.

## I. BACKGROUND[5]

On August 20, 2026, the Court granted Plaintiffs' motion for a preliminary injunction and ordered the District to reinstate and maintain V.G.'s stay-put placement—the educational placement reflected in his April 23, 2025 IEP at Morristown High School—during the pendency of this action. *See* Stay-Put Order. The Court denied the District's cross-motion for relief under *Honig v. Doe*, 484 U.S. 305 (1988), concluding that the District had not shown that maintaining the stay-put placement was substantially likely to result in injury. *Id.* The Court's Stay-Put Order made clear, however, that the District was not prevented from implementing "lawful supervision, safety protocols, behavioral support, evaluations, or other measures consistent with V.G.'s stay-

[5] As the parties are familiar with the underlying facts, the Court does not repeat the full factual background. A full factual summary is included in the Court's August 20, 2026 Stay-Put Order, D.E. 49.

put placement," and preserved the District's ability to seek renewed relief upon materially changed circumstances. *Id.* at 19.

In deciding the parties' cross-motions, the Court reviewed the psychiatric evaluation on which the District again relies here. That evaluation recommended a supported reintegration that included enhanced supervision during transitions, access to a trusted adult, structured peer separation, de-escalation support, a functional behavioral assessment ("FBA"), and a behavior intervention plan ("BIP"). *Id.* at 6, 15. The Stay-Put Order did not, however, approve any particular re-entry plan or authorize measures inconsistent with V.G.'s stay-put placement.

On September 1, 2026, Plaintiffs filed an application seeking enforcement of the Stay-Put Order. Plaintiffs' Application at 1. Plaintiffs represented that, upon V.G.'s return to school, the District assigned an adult to shadow him throughout the entire school day—including in class, in the hallways, at lunch, during arrival, and through dismissal—and required him to leave each class five minutes before his classmates for supervised transitions. *Id.* at 1–2. Plaintiffs argued that those individualized measures were not part of the April 2025 IEP and were inconsistent with the stay-put placement the Court had ordered the District to maintain. *Id.* at 2–3. Plaintiffs' Application also stated that the District opposed the application and maintained that its re-entry plan made no changes to V.G.'s IEP. *Id.* at 1.

The following day, the Court entered the September 2 Text Order. The Court ordered the District to "immediately cease the one-to-one shadowing requirement described in Plaintiff's Application" and to "maintain V.G. in his stay-put placement consistent with the April 23, 2025 IEP and this Court's Stay-Put Order." September 2 Text Order. At the same time, the Court stated that the Text Order did not prohibit the District from employing "ordinary lawful supervision, safety protocols, or behavioral supports" consistent with V.G.'s stay-put educational program. *Id.*

The Court also required the District to confirm its compliance and identify the provisions of the re-entry plan that remained in effect. *Id.*

The District thereafter represented that it had complied with the Text Order and then filed the present Motion. *See* D.E. 54; Mot. The District argues that the September 2 Text Order was entered without the notice, briefing, evidence, or a hearing required for new preliminary injunctive relief, and therefore should be treated as a temporary restraining order subject to dissolution or modification under Rule 65(b)(4). Mot. at 6–10. Alternatively, the District asks the Court to treat the Motion as an emergent request to modify the existing preliminary injunction. *Id.* at 7.

The parties' subsequent submissions address the District's compliance and revised re-entry plan. The District has removed the one-to-one shadowing and five-minute early-transition requirements. D.E. 59 ("Plaintiff's Letter"), Ex. A ("Revised Re-Entry Plan"); D.E. 60 ("District's Response Letter"). Plaintiffs nevertheless maintain that other individualized provisions of the Revised Re-Entry Plan remain inconsistent with V.G.'s stay-put placement, while the District argues that they are permissible supports and safety measures consistent with the April 2025 IEP and the Court's prior Orders. D.Es. 59 & 60. The Court addresses the parties' compliance dispute below.

## II. ANALYSIS

The Court analyzes the parties' recent disputes in two parts. *First*, the Court considers the District's Motion and concludes that Rule 65(b)(4) does not apply because the September 2 Text Order enforced, rather than imposed, the preliminary injunctive relief already entered in the August 20 Stay-Put Order. The Court also finds no basis to modify the existing injunction or to hold an evidentiary hearing. *Second*, the Court addresses the parties' subsequent submissions concerning

the District's revised re-entry plan. The Court concludes that the District has complied with the specific directives of the September 2 Text Order and that, as presently written, the revised plan does not materially alter V.G.'s stay-put placement.

**A. Rule 65(b)(4) Does Not Apply to the Court's September 2, 2026 Text Order**

The District's Motion under Rule 65(b)(4) fails because the September 2 Text Order was not a temporary restraining order issued without notice. The Text Order was an enforcement directive implementing the preliminary injunction the Court had already entered after full adversarial briefing. As a result, the Court will **DENY** the District's Motion.

Rule 65(b)(4) permits an adverse party to move to dissolve or modify a temporary restraining order ("TRO") that another party "obtained . . . without notice." Fed. R. Civ. P. 65(b)(4). The expedited review mechanism therefore reflects the limited function of an ex parte TRO. Because such relief may issue before the adverse party has had an opportunity to be heard, Rule 65(b) restricts a TRO's duration and permits the adverse party to obtain prompt review once it appears. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Loc. No. 70*, 415 U.S. 423, 438–39 (1974). Rule 65(b)(4), however, does not convert every subsequent order directing a party to comply with an existing injunction into a new temporary restraining order merely because the court acts on an expedited basis. *See, e.g., XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns*, No. 23-24366, 2024 U.S. Dist. LEXIS 132103, at *9 n.6 (S.D. Fla. July 25, 2024) (explaining that Rule 65(b)(4) applies to temporary restraining orders issued without notice and therefore did not govern an existing preliminary injunction entered after notice and an opportunity to be heard).

For present purposes, the relevant distinction is between enforcing or clarifying an existing injunction and modifying it by imposing new substantive obligations. A district court has

"inherent authority to ensure that prevailing parties are able to enforce prior judgments," although that authority "cannot extend to the imposition of substantive conditions on enforcement not previously encompassed in the earlier judgment." *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005) (citing *Peacock v. Thomas*, 516 U.S. 349, 356–57 (1996)). Thus, a later order does not modify an injunction merely because it applies the injunction to particular conduct; the question is whether the order actually alters the relief previously imposed. *See N.J. State Nurses Ass'n v. Treacy*, 834 F.2d 67, 70 (3d Cir. 1987).

The September 2 Text Order enforced the Court's existing Stay-Put Order; it did not impose new injunctive relief. The Stay-Put Order had already determined V.G.'s pendent placement and directed the District to reinstate and maintain the educational placement reflected in his April 23, 2025 IEP during this action. *See* Stay-Put Order. Plaintiffs' September 1 Application did not seek a different educational placement or another restriction unrelated to that injunction. Instead, Plaintiffs alleged that the District's newly imposed one-to-one shadowing and five-minute early transitions were inconsistent with the placement the Court had already ordered the District to maintain. *See* Plaintiffs' Application at 1–3.

Plaintiff's allegations implicated the existing injunction because an individualized measure may constitute a change in educational placement when it is likely to affect the child's learning experience "in some significant way," and that term receives an expansive reading when an individual child's educational program is affected. *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 153 (3d Cir. 1984); *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 215 (3d Cir. 2015). Here, an assigned adult accompanied V.G. throughout the school day—including in class, in the hallways, and at lunch—and V.G. was required to leave every class before his classmates. Plaintiffs' Application at 1. The Application therefore required the Court to determine whether the

District's post-injunction conduct remained consistent with V.G.'s stay-put placement.

The September 2 Text Order resolved the compliance issue without altering the underlying injunction. The Text Order did not alter V.G.'s placement, add a new service to his IEP, or impose a substantive obligation independent of the Stay-Put Order. Rather, it ordered the District to cease the one-to-one shadowing described in Plaintiffs' Application and to "maintain V.G. in his stay-put placement consistent with the April 23, 2025 IEP and this Court's Stay-Put Order." Text Order. The September 2 Text Order also expressly preserved the District's authority to employ "ordinary lawful supervision, safety protocols, or behavioral supports" consistent with that placement. *Id.* The Text Order was consistent with the Stay-Put Order itself, which permitted supervision and safety measures only if they were "consistent with V.G.'s stay-put placement." Stay-Put Order at 19. The Court's discussion of Dr. Mallela's recommendations in the Stay-Put Order likewise did not preapprove full-day one-to-one shadowing. Dr. Mallela recommended enhanced supervision during transitions as one component of a broader reintegration plan.. *Id.* at 6, 15. The Text Order therefore applied the existing injunction to the District's post-order conduct without changing V.G.'s placement or imposing a new substantive obligation. *See N.J. State Nurses Ass'n*, 834 F.2d at 70.

Because the September 2 Text Order enforced the Stay-Put Order rather than imposed new preliminary injunctive relief, Rule 65(b)(4) does not provide a basis to dissolve or modify it.[6]

[6] The District's reliance on *Granny Goose Foods* and *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), does not change that conclusion. *Granny Goose* addressed an ex parte TRO, 415 U.S. at 438–40, while *Doran* addressed preliminary injunctive relief issued in the first instance, 422 U.S. at 930–32. Neither concerned a later order enforcing an injunction already entered after adversarial proceedings.

### B. The District Has Not Shown a Basis to Modify the Existing Injunction

The District's alternative request to modify the existing injunction also fails. A party seeking modification must identify a change in circumstances arising after entry of the injunction that makes continued enforcement of the injunction "in its original form inequitable." *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993). The relevant change may concern facts or law, but it must be a circumstance that developed after the injunction issued. *Id.* at 337, 341. A motion to modify therefore is not an opportunity to relitigate the original injunction based on evidence or arguments that were available when the Court entered it. *See id.* at 337.

The District has not identified any changed circumstance warranting modification of the existing injunction. For example, the District does not point to a new safety incident involving V.G. after the August 20 Stay-Put Order or to any material development concerning his conduct since his return to Morristown High School. *See* Mot. Instead, the District relies on the March 12, 2026 incident, V.G.'s prior behavioral history, and Dr. Mallela's April 2026 psychiatric evaluation and recommendations to argue that there "is clearly a need for adult supervision in this case." Mot. at 3–4, 9–10. But each of those circumstances pre-dated the Stay-Put Order and was part of the record the Court considered in resolving the parties' cross-motions. *See* Stay-Put Order. Such facts therefore cannot constitute the post-order change in circumstances required to modify the injunction. *See Favia*, 7 F.3d at 337.

In fact, the District's principal argument confirms this conclusion. The District argues that the September 2 Text Order prevents it from implementing supervisory measures derived from Dr. Mallela's recommendations. Mot. at 8–10. But the Court considered those same recommendations when it entered the Stay-Put Order. The District's disagreement concerns the

scope and enforcement of the injunction, not whether intervening events justify modifying it. *See Favia*, 7 F.3d at 337.

To be clear, the present injunction does not leave the District without means to address legitimate safety concerns. As both the Stay-Put Order and the September 2 Text Order make clear, the District may employ ordinary lawful supervision, safety protocols, and behavioral supports that are *consistent with V.G.'s stay-put educational program*. *See* Stay-Put Order at 19; Text Order. And the Stay-Put Order expressly preserved the District's ability to seek renewed relief should materially changed circumstances arise. *See* Stay-Put Order at 19. No such circumstances have been shown on the present record. The District therefore has not established a basis to modify the existing injunction.

**C. An Evidentiary Hearing Is Not Necessary**

As Rule 65(b)(4) does not apply to the Court's September 2 Text Order, the Court is not required to hold the immediate hearing the District requests. Nor does the District's alternative modification request require an evidentiary hearing. A hearing is ordinarily required when a preliminary injunction decision depends on disputed facts or credibility determinations. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015). Here, the relevant facts are established by the parties' own filings: the terms of the Stay-Put Order and Text Order, the supervision measures described in Plaintiffs' Application and the District's Motion, and the District's subsequent compliance. As the Motion presents a legal disagreement over the character and scope of those orders, an evidentiary hearing is not necessary to resolve it.

**D. The District Is Presently Complying with the Stay-Put Order**

The parties' subsequent submissions also allow the Court to resolve the immediate compliance issue. The District has removed the one-to-one shadowing addressed in the Text Order and the five-minute early transition requirement described in the parties' recent filings.

*See* Plaintiffs' Letter; Revised Re-Entry Plan; District's Response Letter. Plaintiffs argue that the Revised Re-Entry Plan remains inconsistent with the Stay-Put Order because it contains individualized behavioral and safety provisions not included in V.G.'s April 2025 IEP. Plaintiffs' Letter at 1–2.

The Court disagrees with Plaintiffs' broader argument that any measure directed specifically to V.G. necessarily constitutes a change in educational placement. When assessing whether any change in educational placement violates V.G.'s stay-put placement and this Court's Stay-Put Order, the relevant inquiry is whether the challenged measure is "likely to affect in some significant way the child's learning experience." *DeLeon*, 747 F.2d at 153; *see D.M.*, 801 F.3d at 215. On the present record, the remaining provisions of the Revised Re-Entry Plan do not do so.

In fact, several of its core supports substantially track provisions already contained in the April 2025 IEP. The IEP provides for calm and clear redirection, a five-minute reset and access to V.G.'s case manager, private discussion of behavioral concerns, identification and management of triggers and antecedents, choices and positive reinforcement, clear routines and rules, a predictable environment, school-based counseling, home communication, and consultation among teachers, the case manager, and V.G.'s parents. District's Response Letter at 1–2. Consistent with those existing supports, the Revised Re-Entry Plan provides V.G. access to his case manager for check-ins and emotional regulation, permits him to take a break and use a designated quiet space, and directs staff to use calm, brief, and consistent directions. *See* Revised Re-Entry Plan at 1. Its remaining provisions concerning separation from G.R., unauthorized areas, and ordinary disciplinary and crisis-response procedures do not alter V.G.'s instructional program or school day. *See id.* at 1–2. The Revised Re-Entry Plan further provides that if additional individualized services become necessary—including a behavior intervention plan, restrictions, program changes,

or an academic behavioral support person—V.G.'s parents will be invited to an IEP meeting to address them. *Id.*

Accordingly, the District has complied with the Text Order, and the Revised Re-Entry Plan, as presently written, does not alter V.G.'s stay-put placement. The Court notes that its conclusion is limited to whether the Revised Re-Entry Plan alters V.G.'s stay-put placement. Nothing in this Order authorizes further measures that materially alter V.G.'s educational program or otherwise constitute a change in educational placement without compliance with the IDEA.

## III. CONCLUSION AND ORDER

For the reasons stated above,

**IT IS**, on this **18th** day of September, 2026,

**ORDERED** that Morris School District Board of Education's Emergency Motion to Dissolve or Modify the Court's September 2, 2026 Text Order Pursuant to Federal Rule of Civil Procedure 65(b)(4) and for an Immediate Hearing, D.E. 55, is **DENIED**; and it is further

**ORDERED** that the Court's August 20, 2026 Memorandum Order, D.E. 49, and September 2, 2026 Text Order, D.E. 53, remain in effect; and it is further

**ORDERED** that the Revised Re-Entry Plan, as presently written, does not alter V.G.'s stay-put placement, and therefore, the District has complied with the September 2 Text Order; and it is finally

**ORDERED** that nothing in this Memorandum Order prohibits the District from implementing ordinary lawful supervision, safety protocols, behavioral supports, evaluations, or other measures consistent with V.G.'s stay-put placement and the IDEA.

Evelyn Padin, U.S.D.J.